89 F.3d 834
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Beverly K. HIXSON, Plaintiff-Appellant,
v.
NORFOLK SOUTHERN RAILWAY COMPANY, Defendant-Appellee.
 No. 94-5832.
 United States Court of Appeals, Sixth Circuit.
 June 10, 1996.
 
 Before: JONES and BOGGS, Circuit Judges and COFFMAN, District Judge[1]
 PER CURIAM.
 
 
 1
 Appellant, Beverly K. Hixson ("Hixson"), challenges the district court's granting of summary judgment in favor of the appellee, Norfolk Southern Railway Co. ("NS"), on her retaliation claim. Hixson also challenges the district court's dismissal, after a bench trial, of her sexual harassment and constructive discharge claims. For the reasons that follow, we affirm the decisions of the district court.
 
 I.
 
 2
 Hixson was employed by NS as a student electrician from December 11, 1989 until she tendered her resignation on August 8, 1991. After completing a student mechanic-electrician training program, Hixson was assigned to work in the Chattanooga Diesel Shop of NS's DeButts Yard Terminal located in Chattanooga. Hixson and another female employee, Paula Sisson ("Sisson"), were the first women hired to work in the diesel shop.
 
 
 3
 Hixson worked an intermittent rotating schedule before taking an assignment to the third shift in July of 1990. Hixson was the first and only female at NS to work permanently on the third shift. Hixson's immediate supervisor on the third shift was electrician Howard Evans ("Evans"). Frank Hartman ("Hartman") was Hixson's general foreman. Barry Reese ("Reese") was the manager and the ranking company officer of the Chattanooga Diesel Shop in 1989 and 1990.
 
 
 4
 At a meeting before Hixson and Sisson started to work in the diesel shop, Reese told NS's male employees not to do anything which might be interpreted as sexually oriented with regard to the new female employees. Reese told the men to treat the women as they would their mothers or sisters. In May of 1990, Reese held meetings for all three shifts to inform employees of certain new policies regarding safety rules and regulations. In one of those meetings, at which Hixson was present, Reese, in response to a question, used the phrase "have us by the balls," without any intent to offend Hixson or make her feel uncomfortable. Reese immediately apologized for making such a statement. Hixson accepted Reese's apology for the statement and she claims that she considered it a matter for joking with Reese. Hartman testified that Hixson told him at a later point in time that she had Reese "by the balls."
 
 
 5
 After she began working in the diesel shop, Hixson started dating one of her co-workers, A.J. Rice ("Rice"), whom she later married. On several occasions while all three were on duty, Evans saw Hixson and Rice kissing each other. He ordered them to refrain from such activity because it was inappropriate at work. When they failed to heed Evans's directive, Evans reported their conduct to his supervisors.[2]
 
 
 6
 In late 1990, Hixson became upset with Evans because he did not take her on a "road trip."[3] Also in mid- to late August, according to Hixson's testimony, Evans began asking her for dates and suggesting that they engage in a sexual relationship. Hixson further testified that she refused his advances but that Evans persisted by making several specific lewd and sexual remarks. Evans denied that the conduct occurred.
 
 
 7
 Hixson further complained about a heating and ventilation vent which was installed in the women's dressing room and bathroom. As a result of Hixson's complaints about a lack of adequate ventilation, NS installed a ventilation system, one component of which was a standard, double-louvered heating and air conditioning vent. This vent was located in the door to the women's restroom near the floor. Hixson was not satisfied with the vent because she felt that someone could use it as a "peephole" to observe her in the bathroom. Hixson first noticed the alleged peephole in July of 1990 but did not report it to anyone at NS until September 1990. Hixson stated that she did not report the vent problem to NS because she was hoping to catch someone looking through it at her. She never caught anyone looking through the vent.
 
 
 8
 Hixson eventually complained to Gary Brazelton ("Brazelton"), a fellow electrician, about the purported peephole. Brazelton testified that if a person got down on his or her hands and knees, then he or she would have a limited view of a portion of the bathroom. Brazelton immediately attached a piece of cardboard to the vent so that no one could see through it. From that day until the last day Hixson worked, the cardboard (or a permanent metal replacement) remained in place, preventing anyone from peering into the bathroom.
 
 
 9
 In October of 1990 Hixson began missing days at work, allegedly to avoid contact with Evans and to await repairs to the vent. Hixson requested and obtained two weeks of medical leave during October of 1990. While on medical leave, Hixson admitted herself to Northwestern Institute for the treatment of work-related stress that she felt as a result of her perception that she was the victim of sexual harassment which went unresolved by management. Hixson was treated at this psychiatric hospital by Dr. Jack Gomberg.[4]
 
 
 10
 After returning to work, Hixson discussed with Reese both the so-called peephole and also Evans's alleged sexual harassment. Reese immediately contacted R.W. Stevens ("Stevens"), the director of the Equal Employment Opportunity Office for NS, to report the alleged sexual harassment. Reese also contacted NS's physician and requested that Hixson be taken off duty for medical purposes. The company doctor complied with the manager's request and removed Hixson from service.[5]
 
 
 11
 The next day Stevens and Cheryl Moser ("Moser") traveled from the NS EEO office in Virginia to NS in Chattanooga. Stevens and Moser conducted an informal investigation of the allegations to assess the situation in order to determine whether to conduct a formal investigation, which is a process frequently used by NS for investigation of employee complaints. Hixson told them about the vent in the bathroom, the statement made by Reese, and her problems with Evans. The EEO investigation also uncovered behavior on the part of Hixson that could be construed as her having sexually harassed her male co-workers. A formal investigation ensued.
 
 
 12
 Evans, Hixson, Rice, Reese, and Brazelton were the targets of the formal investigation. As a result of this process, several of the employees were disciplined on some, but not all, of the charges. NS issued a letter of reprimand to Evans for failure to control his employees properly.[6] Hixson was charged with 1) kissing and embracing Rice; 2) failing to follow Evans's verbal instructions not to fraternize with Rice; 3) allowing Brazelton to rub her leg; 4) using lewd and obscene language, teasing, joking, and making remarks which had sexual overtones; and 5) touching and pinching employees. Hixson received a thirty-day suspension for kissing a fellow employee while on duty, after being instructed not to do so.
 
 
 13
 In January of 1991, after the medical leave, Hixson returned to work. At that time, she was informed that she would have to undergo a series of psychiatric examinations in order to return to work. It took several months to complete the testing and Hixson was cleared to return to work in June of 1991. She then served her thirty-day suspension and was scheduled to return to work in early August of 1991. Hixson requested a change to the second shift. However, because of her missed work days she did not have enough seniority to bid on a second-shift position. In an August 8, 1991 letter, Hixson informed NS that if she could not work a different shift, then the letter would constitute her resignation. Hixson never returned to work at NS.
 
 
 14
 Plaintiff filed her complaint in the district court on June 6, 1992. On March 16, 1993, she moved for leave to amend her original complaint in order to allege retaliation, which she claimed occurred after she filed her sexual harassment complaint with the Tennessee Human Rights Commission on November 14, 1990. She alleged that the retaliation comprised the letter of reprimand and the thirty-day suspension levied against her. Although it permitted the amendment, the district court later dismissed the retaliation claim as untimely.
 
 II.
 
 15
 We review the district court's findings that led to the dismissal of Hixson's sexual harassment claim to determine whether the factual findings are clearly erroneous. Rabidue v. Osceola Refining Co., 805 F.2d 611, 616 (6th Cir.1986). A finding is clearly erroneous despite the existence of evidence to support it when the reviewing court, in examining the entire record, is left with a definite and firm conviction that a mistake has been made. Id.
 
 
 16
 The district court's dismissal of Hixson's constructive discharge claim is reviewed de novo. Yates v. Avco Corp., 819 F.2d 630, 636-37 (6th Cir.1987). We apply the standard of a reasonable woman, in ascertaining whether Hixson's refusal to return to work under the same or similar conditions that existed during the time of the alleged sexual harassment amounted to a constructive discharge. Id.
 
 
 17
 The district court's granting of a partial summary judgment dismissing Hixson's retaliation claim is also subject to de novo review. Kauffman v. Allied Signal, Inc., Autolite Div., 970 F.2d 178 (6th Cir.1992).
 
 III.
 
 18
 Hixson claims that NS created a hostile and abusive work environment as a result of sexual harassment. Her sexual harassment claim rests upon three separate grounds. The first of these is Reese's use of the phrase "having us by the balls" in a meeting at which Hixson was present. Hixson further alleges that Evans made offensive comments to her. The third and final basis for her sexual harassment claim is the air conditioning vent/"peephole" constructed in the women's bathroom.
 
 
 19
 Although the court found that the manager's statement of "having us by the balls" was credible evidence of sexual harassment, the district court concluded that this evidence was an isolated incident that did not give rise to the necessary threshold to create a hostile or abusive work environment as enunciated in Harris v. Forklift Sys., Inc., 114 S.Ct. 367 (1993). Harris states in pertinent part:
 
 
 20
 [M]ere utterance of an ... epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive--is beyond Title VII's purview.
 
 
 21
 Harris, 114 S.Ct. at 370 (citation omitted). The district court's finding that this isolated phrase did not create a hostile or abusive work environment is not clearly erroneous.
 
 
 22
 In regard to Hixson's claims that Evans made unwelcome and offensive sexual comments and advances toward her, the district court concluded that Evans was a credible witness and that Hixson was not. The district court determined that Hixson had made totally unfounded allegations against Evans. The district court found that Evans's reprimand of Hixson for kissing Rice while on duty and Evans's failure to take Hixson on the road trip were the real reasons for Hixson's allegations. Where one person alleges misconduct, but the other denies such misconduct, credibility of the parties could not be more critical. A district court's credibility determinations are given great deference by the appellate court and cannot be set aside unless clearly erroneous.
 
 
 23
 When a trial judge's finding is based on the decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.
 
 
 24
 Anderson v. City of Bessemer City, North Carolina, 470 U.S. 564 (1985) (emphasis added). Lacking any such inconsistency, the district court's credibility assessment stands.
 
 
 25
 Hixson argues that the district court failed to consider Evans's letter of reprimand for his having made inappropriate sexual comments to Hixson. Having concluded that Evans's letter of reprimand addressed only his lack of control over his employees, the district court had no reason to include the letter reprimanding Evans in its analysis of Hixson's sexual harassment claim.
 
 
 26
 Hixson's final basis for her sexual harassment claim involves the construction of the heating and air conditioning vent in the ladies' bathroom which she alleges could be used as a peephole. This vent was constructed by NS as the result of a complaint by Hixson that there was no ventilation in the ladies' restroom. The district court found that the vent is a standard, double-louvered vent commonly seen in commercial buildings. The district court further emphasized that no one was ever seen looking through the vent trying to view Hixson while she was in the restroom. A cardboard cover was placed over the vent as soon as Hixson expressed any concern. There is no evidence that anyone, except Hixson, considered the vent a peephole. In reviewing the evidence, this court is not left with a definite and firm conviction that the district court made a mistake in determining that the circumstances surrounding the vent did not rise to the level required by Harris, whether the incident is viewed alone or in conjunction with the "having us by the balls" comment.
 
 
 27
 Hixson argues that NS did not offer any legitimate, non-discriminatory reason for the construction of the vent in a manner that defeats Hixson's perception that the vent was a peephole. However, a plaintiff must first put forth a prima facie case of sexual harassment before a defendant has the duty to proffer legitimate, non-discriminatory reasons for its actions. St. Mary's Honor Center v. Hicks, 125 L.Ed.2d 407 (1993) and McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The district court's decision that Hixson failed to establish a prima facie case of sexual harassment is not clearly erroneous.
 
 IV.
 
 28
 A constructive discharge occurs if working conditions are so difficult or unpleasant that a reasonable woman in the employee's shoes would feel compelled to resign. Yates, 819 F.2d at 636.
 
 
 29
 This court has previously held that proof of discrimination alone is not a sufficient predicate for a finding of constructive discharge; there must be other aggravating factors. We have also required some inquiry into the employer's intent and the reasonably foreseeable impact of its conduct on the employee. Because we must look both at the employer and the employee, it is foreseeable that one of these tests could be fulfilled while the other would not.
 
 
 30
 Yates, 819 F.2d at 637 (citations omitted) (emphasis added). The district court implicitly rejected Hixson's constructive discharge claim. Hixson argues that a constructive discharge claim must be established by applying the two-prong test that gauges the feelings of the reasonable employee balanced by foreseeability on the part of the employer that the employee might resign, given the circumstances the employee experienced in the workplace.
 
 
 31
 Hixson fails to understand that a plaintiff must first make a threshold showing that the employer engaged in intentional discriminatory practices, if the claim of constructive discharge is alleged as part of the damage resulting from the sexual harassment. This court has stated that "a determination of constructive discharge necessarily rests on the finding of discriminatory intent." Lynch v. Freeman, 817 F.2d 380, 385 (6th Cir.1987). Because the district court found, and this court agrees, that Hixson did not make a prima facie case of discrimination, her claim of constructive discharge must fail.
 
 
 32
 We here uphold, as not clearly erroneous, the district court's conclusion that Hixson failed to establish her prima facie case. Lest this court's conclusion that the constructive discharge claim was properly dismissed be misinterpreted as a review for clear error on the constructive discharge claim instead of a de novo review, resting as it does on the absence of a prima facie case, we hasten to correct that impression. Regardless of whether this court reviews the constructive discharge dismissal under a clearly erroneous standard or undertakes a de novo review, the result is the same: the employer lacked the requisite discriminatory intent. This court concurs with the district court's decision to dismiss the constructive discharge claim.
 
 V.
 
 33
 Section 704(a) of Title VII provides that an employer may not discriminate against an employee because he or she has opposed any practice made an unlawful employment practice by this section. A prima facie case of retaliation is made by an employee who shows that he or she engaged in a protected activity, he or she was subsequently subjected by the employer to adverse employment action, and a causal link existed between the two. Yates, 819 F.2d at 638.
 
 
 34
 It is not necessary to reach the merits of Hixson's retaliation claim, because the claim fails due to a procedural defect. Hixson filed a sexual harassment claim with the EEOC on November 14, 1990. Hixson was issued a "right-to-sue" letter on April 8, 1992. The right-to-sue letter contained the following language:
 
 
 35
 This is your NOTICE OF RIGHT TO SUE. It is issued at your request. If you intend to sue the respondents named in your charge, YOU MUST DO SO WITHIN 90 DAYS OF YOUR RECEIPT OF THIS NOTICE; OTHERWISE YOUR RIGHT TO SUE IS LOST.
 
 
 36
 Hixson filed her complaint in the district court on June 16, 1992, with the complaint including allegations of sexual harassment and constructive discharge. There was no mention of a retaliation claim.[7]
 
 
 37
 On March 16, 1993, almost a year later, Hixson moved to amend her complaint to add a retaliation claim. The district court granted this motion but stated in its order that the allowance of the amendment did not mean the defendant had waived any defenses, particularly as to the timeliness of the retaliation claim.
 
 
 38
 The applicable time limitations under 42 U.S.C. § 2000e et seq. require the filing of suit within ninety days after receipt of the right-to-sue letter. See Peete v. American Standard Graphic, 885 F.2d 331 (6th Cir.1989). The district court held that Hixson failed to file her retaliation claim within ninety days of receipt of the right-to-sue letter. Hixson argues that the only authority cited by the district court is inapplicable to the instant action and cites authority for the proposition that amendments of complaint should be freely granted.
 
 
 39
 Only when the subject matter of the amendment arises out of conduct, transactions, or occurrences set forth in the original pleading, as allowed under Fed.R.Civ.P. 15, does the amendment relate back to the date of the original filing of the complaint. The events alleged in Hixson's retaliation count do not arise out of the conduct, transactions, or occurrences as set forth in the original pleading. At the time Hixson filed her original complaint, she was equipped with all of the requisite facts necessary to form the basis of her claim against NS for retaliation. Knowing these facts, she should have raised her retaliation claim in her original complaint so that it would not be time-barred.
 
 
 40
 AFFIRMED.
 
 
 
 [1]
 The Honorable Jennifer B. Coffman, United States District Judge for the Eastern and Western Districts of Kentucky, sitting by designation
 
 
 [2]
 Hixson argues that this conduct is not subject to discipline because NS did not have a "no fraternization policy" that prohibited co-workers from dating each other or otherwise engaging in romantic relationships at work
 
 
 [3]
 A "road trip" is necessary when a locomotive breaks down at a location other than the yard, and mechanics must travel to the locomotive to repair it
 
 
 [4]
 Gomberg found that Hixson had been clinically depressed for at least two years; suffered from generalized anxiety disorder, which he defined as excessive ongoing stress; abused alcohol; was a heavy cocaine user in past years and was still using cocaine; and had a borderline personality disorder, which he defined as a pervasive pattern of instability of mood, internal/personal relationships, and self-image
 
 
 [5]
 Hixson testified that she did not know that she had been removed from service for medical reasons until after her employment with NS had terminated
 
 
 [6]
 The parties dispute whether Evans was issued a letter of reprimand for inadequate supervision only, or for sexual harassment as well. NS contends that Evans was not reprimanded for sexual harassment. Hixson asserts, on the other hand, that he was reprimanded on both grounds. The district court credited the defendants' version of the facts
 
 
 [7]
 At oral argument, counsel for Hixson argued that while the specific legal theory of retaliation was not in the original complaint, the factual basis for the claim was there. Because the complaint failed to give notice to the employer of a retaliation claim, the court rejects this approach