RADCLIFF, Appellant,

v.

STEEN ELECTRIC, INC. et al., Appellees.

[Cite as *Radcliff v. Steen Elec., Inc.,* 164 Ohio App.3d 161, 2005-Ohio-5503.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 22407.

Decided Oct. 19, 2005.

162

Kevin J. Breen, for appellant.

Ida MacDonald, for appellee Theodore Goumas.

Dennis R. Thompson and Christy B. Bishop, for appellee Steen Electric, Inc.

---

CARR, Judge.

{¶ 1} Appellant, Emmilie Radcliff, appeals from two orders out of the Summit County Court of Common Pleas. In the first, the trial court granted summary judgment in favor of appellees, Steen Electric, Inc., Robert Steen, and William Steen, on certain of appellant's claims. In the second, a visiting judge, sitting by assignment, bifurcated the trial on appellant's remaining claims and Theodore Goumas's counterclaims.[1] This court affirms in part and reverses in part.

## I

{¶ 2} Appellant worked as a bookkeeper at Steen Electric, Inc. for 27 years before ending her employment on August 23, 2002. During the late afternoon of that day, appellant's adult son, Kenny Forrer, came to Steen Electric to pick up appellant and drive her home. Theodore Goumas, a personal friend and business associate of Robert and William Steen ("the Steen brothers"), was on Steen Electric's premises at the time Forrer entered the premises to pick up appellant. There was a series of incidents at Steen Electric on August 23, 2002, that compelled appellant's filing of her complaint on November 7, 2002.

{¶ 3} In her complaint, appellant alleged that Goumas exposed his penis to her and to others, that Goumas used a banana to simulate a penis, and that Goumas asked appellant's son, in front of appellant, whether he wanted the banana "for a snack on [his] way home." Appellant further alleged that Goumas acted with the prior knowledge and consent and at the direction of Steen Electric and the Steen brothers. Based on these allegations, appellant alleged five counts in her complaint, to wit: Count One: wrongful termination of employment, i.e., constructive discharge premised on appellees' maintenance of a hostile work environment due to sexual harassment in the workplace; Count Two: negligent and/or intentional infliction of emotional distress; Count Three: age discrimination; Count Four: negligent hiring, retention and supervision; and Count Five: assault.

{¶ 4} Steen Electric and the Steen brothers filed an answer and a single counterclaim, alleging that appellant's claims were frivolous pursuant to R.C. 2323.51. Theodore Goumas filed an answer and three counterclaims, alleging

---

1. Theodore Goumas was named as a defendant in the case below, and appellant raised an assignment of error in regard to the status of his counterclaims. Goumas did not file an appellate brief in this matter.

that appellant's claims were frivolous (without specific reference to R.C. 2323.51) and that appellant's claims were filed for the purpose of slandering and libeling Goumas.

{¶ 5} Appellant filed a motion for summary judgment on the counterclaims of all four defendants.[2] Appellant argued that there was evidence to support her claim that all four defendants created a hostile work environment and that she had established a prima facie case of age discrimination. In conclusion, appellant requested summary judgment on "Defendants' counterclaim alleging frivolous conduct." Appellant failed to address Goumas's two counterclaims alleging defamation.

{¶ 6} Only appellees Steen Electric and the Steen brothers responded to appellant's motion for summary judgment on the counterclaims. Goumas failed to file a response.

{¶ 7} Steen Electric and the Steen brothers filed a motion for summary judgment on their behalf and purportedly on Goumas's behalf in relation to appellant's claims. This court accepts appellant's argument that, pursuant to Civ.R. 11, Goumas had no motion for summary judgment pending before the trial court because neither Goumas nor his attorney signed any motion for summary judgment on his behalf. Appellant responded in opposition to appellees' motion for summary judgment.

{¶ 8} The trial court issued its order on the motions for summary judgment on September 15, 2004, considering appellees' motion as a motion in regard to Goumas, as well. The trial court granted appellees' motion for summary judgment in favor of appellees as to Count One (wrongful termination) and Count Two (negligent or intentional infliction of emotional distress), as to all Steen defendants, Count Three (age discrimination), Count Four (negligent hiring, retention, and supervision), and Count Five (assault) as to Steen Electric and William Steen. The trial court denied appellees' motion for summary judgment as to Count Two (intentional infliction of emotional distress) as to Goumas and Count Five (assault) as to Robert Steen.

{¶ 9} The trial court further issued its ruling on appellant's motion for summary judgment, stating in its entirety:

Defendant has filed a counterclaim alleging malicious prosecution asserting there is no basis in law or fact for Plaintiff to bring this action. Plaintiff has

---

2. Appellant moved the trial court for summary judgment "on the Counterclaims filed by Defendants, Steen Electric, Inc., Robert Steen, William Steen and Theodore Goumas." Throughout the body of appellant's motion, however, she consistently referred to "Defendants' counterclaim" alleging frivolous conduct within the meaning of R.C. 2323.51, in the singular.

filed a motion for summary judgment on the counterclaim. Defendant has replied.

Pursuant to the findings above, the court finds that the Plaintiff does have a basis in law to bring this action. Therefore, Plaintiff's motion for summary judgment on the counterclaim is GRANTED.

{¶ 10} The remaining pending claims were scheduled for trial on September 21, 2004, before a visiting judge, sitting by assignment of the Ohio Supreme Court. There is no dispute that the visiting judge ordered bifurcation of trial on appellant's remaining claims and Goumas's counterclaims immediately prior to the commencement of trial, although there is no written order to that effect issued prior to trial. On October 20, 2004, the visiting judge issued an order, journalizing the jury's verdicts in favor of Robert Steen and Theodore Goumas in regard to appellant's claims. The visiting judge further recited the following:

Prior to commencing the jury trial, the court ordered bifurcation of Defendant Theodore Goumas' counterclaim and trial proceeded only on Plaintiff's claims. Therefore, the counterclaim of Defendant Goumas remains pending in this court as a separate, independent cause of action.

It is not clear from the visiting judge's order of October 20, 2004, which of Goumas's counterclaims were bifurcated for later trial.

{¶ 11} Noting that all of appellant's claims had proceeded to final judgment, the visiting judge ordered that the October 20, 2004 order be final and appealable. Appellant timely appeals, raising three assignments of error for review.

## II

### *ASSIGNMENT OF ERROR I*

The trial court erred in granting defendants' motion for summary judgment on plaintiff's claim for constructive discharge based upon hostile work environment.

{¶ 12} Appellant argues that the trial court erred by granting summary judgment in favor of appellees on appellant's claim alleging wrongful discharge. This court agrees.

{¶ 13} This court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. This court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the nonmoving party and resolving any doubt in favor of the nonmoving party. *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 12, 13 OBR 8, 467 N.E.2d 1378.

{¶ 14} Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated;

(2) the moving party is entitled to judgment as a matter of law; and

(3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 15} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the nonmoving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the nonmoving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. *State ex rel. Zimmerman v. Tompkins* (1996), 75 Ohio St.3d 447, 449, 663 N.E.2d 639.

{¶ 16} In count one of her complaint, appellant alleged that appellees constructively discharged her by creating a hostile work environment due to sexual harassment in the workplace. Appellant asserted that the Steen brothers were employers within the meaning of R.C. 4112.01(A)(2). Accordingly, this court construes her complaint within the context of R.C. Chapter 4112.

{¶ 17} Ohio courts "apply federal law precedent interpreting Title VII of the 1964 Civil Rights Act to cases involving violations of R.C. Chapter 4112." *Ohio Civ. Rights Comm. v. David Richard Ingram, D.C., Inc.* (1994), 69 Ohio St.3d 89, 95, 630 N.E.2d 669.

{¶ 18} The Sixth Circuit Court of Appeals has established the standards by which appellant might prove her constructive-discharge claim based on sexual harassment.

A finding of constructive discharge in this circuit requires an inquiry into both the objective feelings of the employee and the intent of the employer * * *. This court has * * * held that 'proof of discrimination alone is not a sufficient predicate for a finding of constructive discharge, there must be other aggravating factors.' We have also required some inquiry into the employer's intent and the reasonably foreseeable impact of its conduct on the employee * * *. Thus it would appear that the courts have been trying to create a two

pronged test whereby the feelings of the reasonable employee would not be enough to show discharge without at least some foreseeability on the part of the employer. (Ellipses sic.)

*Wheeler v. Southland Corp.* (C.A.6, 1989), 875 F.2d 1246, 1249, quoting *Yates v. Avco Corp.* (C.A.6, 1987), 819 F.2d 630, 637.

{¶ 19} The *Wheeler* court continued:

"[T]he constructive discharge issue depends upon the facts of each case and requires an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct upon the employee. This court has also endorsed the well recognized rule in labor relations that a man is held to intend the foreseeable consequences of his conduct. Therefore, an employee can establish a constructive discharge claim by showing that a reasonable employer would have foreseen that a reasonable employee (or this employee, if facts peculiar to her are known) would feel constructively discharged." (Citations omitted.)

Id., 875 F.2d at 1249.

{¶ 20} Accordingly, to prevail on her claim of constructive discharge premised on a hostile working environment based on sexual harassment, appellant must "show that a reasonable employer would have foreseen that she would resign, given the sexual harassment she faced." Id. Appellant, however, must first make the threshold showing that appellees engaged in intentional discriminatory practices, where her claim of constructive discharge is premised on sexual harassment. *Hixson v. Norfolk S. Ry. Co.* (C.A.6, 1996), No. 94–5832, 1996 WL 316505.

{¶ 21} The incidents at Steen Electric underlying appellant's claim include Goumas's alleged exposure of his penis in front of appellant and Goumas's inquiry to Forrer in front of appellant whether Forrer would like the banana, which Goumas had earlier used to simulate a penis, for a snack. Appellant further testified at deposition that Robert Steen forcibly grabbed and threatened her to prevent her from leaving Steen Electric premises, as Goumas and the Steen brothers were engaging in a conversation describing sexually explicit conduct. While the Steen brothers deny any prior knowledge of the nature of Goumas's planned prank, Robert Steen and Theodore Goumas both admitted at their depositions that the Steen brothers knew that Goumas intended to play a prank on Forrer when he arrived to pick up appellant because of their understanding that Forrer had commented that Goumas was a homosexual.

{¶ 22} Appellant has presented evidence of a collaborative effort between the Steen brothers and Goumas to subject appellant to a series of incidents of sexually explicit conduct and conversations soon before she was to have taken a

leave of absence from Steen Electric. Accordingly, a genuine issue of material fact exists regarding whether appellees possessed the necessary threshold discriminatory intent. *Hixson,* supra.

{¶ 23} The question remains whether a reasonable employer would have foreseen appellant's resignation under the circumstances. This court therefore looks to any aggravating factors to establish the foreseeability of appellant's resignation.

{¶ 24} In this case, the nature of the conduct was an aggravating factor. See *Wheeler,* 875 F.2d at 1250. The Steen brothers knew that Goumas intended to play a prank on appellant's son in retaliation for alleged comments that Forrer made regarding Goumas's sexual orientation. One of the Steen brothers sought out Forrer in the parking lot and lied by telling him that appellant had requested that he come inside, knowing that Goumas intended to play some prank. There is evidence that the Steen brothers attempted to compel appellant to submit to the ongoing harassment by forcibly restraining her liberty. Appellant testified that, notwithstanding her attempts to break free and flee, Robert Steen grabbed her and threatened her, stating that "nasty things could happen to little old widow women like [appellant]."

{¶ 25} These incidents occurred at the end of appellant's last day before she planned to take a leave of absence to address some personal matters involving, in part, her grief arising out of her husband's recent death. Appellant testified that the stress of the harassment caused her fear and nightmares and precluded her from leaving her home.

{¶ 26} This court finds that an employee's exposure to a penis, as well as another object used to simulate a penis, in the workplace, constitutes the type of harassment which would make an employee's resignation reasonably foreseeable.

{¶ 27} This court finds that this result may be especially true when that conduct is perpetrated by a nonemployee with the tacit consent of the employer. In addition, appellant has presented evidence to demonstrate that the working conditions were so intolerable as to compel a reasonable person to resign. See *Zimmerman,* 75 Ohio St.3d at 449, 663 N.E.2d 639. Accordingly, this court finds that genuine issues of fact exist in regard to appellant's claim alleging constructive discharge arising out of a hostile work environment premised on sexual harassment.

{¶ 28} Appellees further argue in their motion for summary judgment that constructive discharge in the harassment context will not lie where the employee refuses to allow the employer to remedy the alleged harassment that gave rise to the employee's quitting. Appellees cite their attempts to apologize to appellant after the incident as evidence of their intent to remedy the situation.

{¶ 29} None of the cases cited by appellees involve a situation where the sole owners and officers of the business collaborated in and, in fact, facilitated the harassing conduct. In both *Queener v. Windy Hill Ltd. Co.* (Dec. 20, 2001), 8th Dist. Nos. 78067 and 78217, 2001 WL 1685581, and *Tackas–Davis v. Concorde Castings, Inc.* (Dec. 15, 2000), 11th Dist. No. 99–L–035, the harassment was perpetrated by an independent contractor and mere employee, respectively, and had to be brought to the attention of the company. In *Biles v. Ohio Bur. of Emp. Serv.* (1995), 107 Ohio App.3d 114, 667 N.E.2d 1244, the appellant believed that she had been terminated, when in fact she had not. This court does not find appellees' argument persuasive. Rather, this court finds that it is nonsensical to require that an employee must allow the employer to remedy a situation, where there is evidence that the employer himself facilitated the harassment. This is not the case where appellees might have counseled, placed on probation, or fired the offending employees, because they were the offending employees. Under these circumstances, this court finds that appellant need not have allowed appellees the opportunity to remedy the situation before she might sustain a claim for constructive discharge.

{¶ 30} Appellees further argued in their motion for summary judgment that appellant cannot establish a claim for hostile work environment because the harassment was isolated, was not directed towards her, was not based on sex, and could not reasonably have been known by the employer. Appellees also argued that appellees were not provided with an opportunity to take prompt corrective action. This court finds that appellees' arguments lack merit.

{¶ 31} To prevail on a claim of hostile-workplace-environment sexual harassment, appellees argue that appellant must prove the following:

> (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the 'terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment,' and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action.

*Hampel v. Food Ingredients Specialties, Inc.* (2000), 89 Ohio St.3d 169, 729 N.E.2d 726, paragraph two of the syllabus.

{¶ 32} The Supreme Court continued:

> In order to determine whether the harassing conduct was 'severe or pervasive' enough to affect the conditions of the plaintiff's employment, the trier of fact, or the reviewing court, must view the work environment as a whole and

consider the totality of all the facts and surrounding circumstances, including the cumulative effect of all episodes of sexual or other abusive treatment. Id. at paragraph five of the syllabus.

{¶ 33} Appellees presented evidence that appellant herself had engaged in incidents of sexual harassment, including making sexually based comments regarding others while working at Steen Electric, inferring that appellant would not find Goumas's pranks and the Steen brothers' comments unwelcome. Appellant testified, however, that she was shocked, angered, and frightened by Goumas's and the Steen brothers' conduct and comments. Forrer also testified that appellant expressed shock at Goumas's exposure of his penis and that she rushed to leave the premises after the incidents. Forrer averred in an affidavit that appellant was crying and shaking as they left Steen Electric. Accordingly, a genuine issue of material fact exists as to the unwelcome nature of the conduct.

{¶ 34} Goumas testified that he informed the Steen brothers that he intended to play a prank on appellant's son in retaliation for alleged comments Forrer made regarding Goumas's alleged sexual orientation. Robert Steen was further aware that Goumas intended to play the prank on Forrer when he was on Steen Electric premises to pick up appellant and that Goumas had been using a banana to simulate a penis. In addition, there is evidence to indicate that appellant would likely witness any prank on her son because of Forrer's presence on Steen property and his proximity to appellant. Appellant also testified that her son is a homosexual and that the Steen brothers knew that. Robert Steen denied knowing at the time of the incident that Forrer was a homosexual. Under the circumstances, this court finds that a genuine issue of material fact exists regarding whether the harassment was based on sex.

{¶ 35} Appellees argued in their motion for summary judgment that the incidents on the sole day of August 23, 2002, could not as a matter of law constitute severe or pervasive harassing conduct. This court disagrees.

{¶ 36} In this case, in reviewing the totality of the facts and surrounding circumstances, there is evidence that appellees collaborated with and facilitated Goumas's retaliatory acts against Forrer at a time that he would be in his mother's (appellant's) company. There is evidence to indicate that the Steen brothers attempted to compel Forrer and appellant to submit to the ongoing harassment by forcibly restraining appellant's liberty. The incidents occurred at a time when the Steen brothers knew that appellant was planning to leave the company for at least a period of time and that they had another employee who had been trained to assume appellant's job responsibilities. Under those circumstances, there was no risk to Steen Electric should appellant have refused to return to work after the incidents. Further, while company-sanctioned simulation of a penis with a banana by Goumas cannot reasonably be considered mild

conduct, appellant further alleged that Goumas exposed his actual penis to her, ostensibly within the context of a prank in retaliation for an alleged remark by appellant's son. A review of the totality of the circumstances indicates that a genuine issue of material fact exists regarding whether appellees' conduct was sufficiently severe to affect any matter relating to appellant's employment at Steen Electric.

{¶ 37} Finally, the Steen brothers' alleged collaboration and facilitation of Goumas's exposure, simulation of a penis, and sexual innuendo, coupled with the Steen brothers' alleged comments regarding bestiality, present a question of fact regarding whether the harassment was committed by supervisors of Steen Electric. In addition, there is no dispute that the Steen brothers knew that Goumas intended to play a prank on Forrer when it was likely that appellant would be present. There was further evidence to indicate that the Steen brothers understood that Goumas intended to play the prank in retaliation for alleged comments Forrer had made in regard to Goumas's alleged sexual orientation. Not only did the Steen brothers fail to try to dissuade Goumas from playing any pranks, but there is evidence that they attempted to restrain appellant to allow Goumas to engage in the harassing conduct. Accordingly, genuine issues of material fact remain in regard to the final element.

{¶ 38} Because appellant has presented appropriate evidence to rebut appellees' evidence regarding the claim alleging constructive discharge, the trial court erred in granting summary judgment in favor of appellees in regard to Count One. Appellant's first assignment of error is sustained.

### ASSIGNMENT OF ERROR II

The trial court erred in granting the motion for summary judgment of defendants, Steen Electric, Inc., Robert G. Steen and William Steen on plaintiff's claim for intentional infliction of emotional distress.

{¶ 39} Appellant argues that the trial court erred in granting summary judgment in favor of Steen Electric and the Steen brothers on appellant's claim alleging intentional infliction of emotional distress. This court agrees.

{¶ 40} To prevail on a claim of intentional infliction of emotional distress, appellant must demonstrate:

1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and was such that it can be considered as "utterly intolerable in a civilized community;" 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the

mental anguish suffered by plaintiff is serious and of a nature that "no reasonable man could be expected to endure it."

*Pappas v. United Parcel Serv.* (Apr. 11, 2001), 9th Dist. No. 20226, 2001 WL 358390, quoting *Pyle v. Pyle* (1983), 11 Ohio App.3d 31, 34, 11 OBR 63, 463 N.E.2d 98.

{¶ 41} The Ohio Supreme Court, quoting the Restatement of the Law 2d, Torts (1965), Section 46, Comment d stated:

It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. * * * There is no occasion for the law to intervene in every case where some one's feelings are hurt.

*Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.* (1983), 6 Ohio St.3d 369, 374–375, 6 OBR 421, 453 N.E.2d 666.

{¶ 42} This court has further stated:

In order to constitute serious emotional distress for the purposes of an intentional infliction of emotional distress claim, the injury that is suffered must surpass upset or hurt feelings, and must be such that "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case."

*McPherson v. Goodyear Tire & Rubber Co.*, 9th Dist. No. 21499, 2003–Ohio–7190, 2003 WL 23094976, at ¶ 35, quoting *Davis v. Billow Co. Falls Chapel* (1991), 81 Ohio App.3d 203, 207, 610 N.E.2d 1024.

{¶ 43} A review of the record indicates that both Robert and William Steen, who each own 50 percent of Steen Electric and hold three officer positions between the two of them, knew that Goumas intended to play a prank on Kenny Forrer. Goumas testified at his deposition that he spoke to both Steen brothers about his intent to "prank" Forrer, because Robert Steen had earlier told him that Forrer thought he was a homosexual. The Steen brothers knew that Goumas intended to play a prank on Forrer, and Robert Steen testified at his deposition that he saw Goumas use a banana to simulate a penis in the Steen

Electric conference room in the presence of Steen's daughter and prior to Goumas's interaction with Forrer. Goumas subsequently asked Forrer if he would like to take the banana home for a snack. Inez Cames, a Steen Electric employee at the time, testified at her deposition that William Steen told her afterwards that they had intended this joke for Forrer. Under these circumstances, it is not unreasonable to believe that the Steen brothers knew that Goumas's prank on Forrer would involve sexual overtones.

{¶ 44} The evidence indicates that the Steen brothers knew that Goumas intended to play the prank on Forrer on the premises of Steen Electric when Forrer came to pick up appellant. Although appellant had told a co-worker to tell her son to stay in the parking lot, Forrer entered the Steen Electric building and told appellant that William Steen had told him that appellant wanted to see him inside. Forrer entered the building and remained with appellant. Under these circumstances, it is not unreasonable to believe that appellant would witness any prank that Goumas might play on Forrer.

{¶ 45} Appellant testified at deposition that she witnessed Goumas exposing his penis in the conference room, while she averred in an affidavit that Goumas exposed his penis while standing in her doorway. Appellant further averred that she saw Goumas pull a rotten banana out of his pants and ask her son whether he wanted the banana for a snack on his way home.

{¶ 46} Forrer averred in an affidavit that Robert Steen invited him into the conference room for pizza, that he declined, and that he then observed Goumas exiting the conference room and shaking his penis at Forrer. Forrer averred that he then heard appellant exclaim, "Oh, my God." While Goumas admitted to simulating a penis with a banana, he denied exposing his penis at any time at Steen Electric.

{¶ 47} There is substantial credible evidence to indicate that appellant was essentially blind in one eye and was suffering visual impairment in her other eye at the time of the incident. It is unclear whether she saw Goumas's penis or merely a banana, which she believed to be his penis. Regardless, however, this court finds as a matter of law that the exposure of a penis or simulated penis in a work environment for the purpose of retaliation rises to the level of extreme and outrageous conduct. In addition, there is evidence to indicate that appellees sanctioned Goumas's sexually oriented prank in the presence of appellant. That an employer might sanction such behavior in the workplace in retaliation for Forrer's rumored comment about Goumas's sexual orientation is also intolerable in a civilized community.

{¶ 48} Appellees asserted in their motion for summary judgment that appellant could not demonstrate that she had suffered serious mental anguish as a result of

the incident. In support, appellees appended to their motion a response from Dr. Eric Geisler to the Rehabilitation Services Commission, Bureau of Disability Determination, transcribed September 30, 2002, regarding his diagnosis of appellant. Dr. Geisler referenced appellant's mental impairments, stating:

> [Appellant] is currently suffering from an anxiety-related problem secondary to her new blindness and loss of independence. Her capacity to understand and her memory, as well as sustained concentration and persistence, as [sic] unaffected. Social interaction and adaptation are severely affected by her new blindness and the accompanying anxiety.

Dr. Geisler made no reference to any anxiety that appellant may have been suffering as a result of the incident at Steen Electric.

{¶ 49} Appellant testified that she suffered hysteria, overwhelming fear, and nightmares as a result of her exposure to Goumas's penis and simulated penis at Steen Electric. She swore in regard to an interrogatory that she saw Dr. Geisler in regard to her mental distress arising from the incident and that he prescribed a sedative to calm her nerves. Although self-serving testimony alone is insufficient to substantiate a claim for emotional distress, appellant presented additional evidence of her mental anguish, as observed by third parties. See *Buckman–Peirson v. Brannon,* 159 Ohio App.3d 12, 2004–Ohio–6074, 822 N.E.2d 830, at ¶ 41 (the testimony of lay witnesses acquainted with the plaintiff may be offered to show significant changes they have observed in regard to the plaintiff's emotional makeup, in lieu of expert testimony.)

{¶ 50} Forrer averred in an affidavit that appellant was crying and shaking as they drove home after the incident. Caroline VanHorn, a longtime friend of appellant, averred that she observed that appellant was very upset and could not talk without crying the day after the incident. Notwithstanding appellant's failure to present any expert testimony in support of her claim for emotional distress, the sworn statements of Forrer and VanHorn serve to raise a genuine issue of material fact in this regard.

{¶ 51} Based on the evidence, this court finds that genuine issues of material fact remain in regard to appellant's claim against Steen Electric and the Steen brothers concerning her claim for intentional infliction of emotional distress. Accordingly, the trial court erred in granting summary judgment in favor of appellees in that regard and dismissing appellant's claim for intentional infliction of emotional distress. Appellant's second assignment of error is sustained.

### ASSIGNMENT OF ERROR III

The trial court erred in its order of October 20, 2004 bifurcating the counterclaim of defendant Goumas when that counterclaim had already been

dismissed at summary judgment in the court's prior order of September 15, 2004.

{¶ 52} Appellant argues that the visiting judge who heard the matter at trial erred when he recognized that Goumas had counterclaims remaining, notwithstanding the assigned judge's order of September 15, 2004, wherein she granted appellant's motion for summary judgment "on the counterclaim." This court disagrees.

{¶ 53} This court has carefully scrutinized appellant's motion for summary judgment. Appellant clearly sought summary judgment in her favor in regard to the counterclaims of Steen Electric, the Steen brothers, and Theodore Goumas. Appellant argued in support of summary judgment, however, only on the counterclaims alleging frivolous conduct. Appellant failed to present any evidence or argument in her motion for summary judgment regarding Goumas's defamation counterclaims—i.e., his independent counterclaims for libel and slander. Appellant admits in her appellate brief that Goumas "included claims for defamation in his counterclaim."

{¶ 54} The trial court granted appellant's motion for summary judgment expressly in regard to the counterclaim(s) alleging frivolous conduct. The trial court did not address Goumas's counterclaims alleging defamation.

{¶ 55} Notwithstanding Goumas's failure to respond to appellant's motion for summary judgment, because appellant did not present any evidence in regard to Goumas's defamation counterclaims, appellant necessarily did not meet her burden under *Dresher,* 75 Ohio St.3d 280, 662 N.E.2d 264, to show that no genuine issue of material fact existed in regard to those counterclaims. Where appellant failed to move for summary judgment in regard to Goumas's counterclaims alleging libel and slander, the trial court necessarily could not have granted summary judgment in regard to those counterclaims. Accordingly, the visiting judge did not err in finding that counterclaims, which might be bifurcated at trial, remained.

{¶ 56} Appellant argues that the trial court's law clerk informed him by telephone that all counterclaims had been dismissed. There is no record of that in the record before this court. As appellant correctly asserts, a court speaks only through its journal entries, and not through mere oral pronouncements. *State ex rel. Indus. Comm. v. Day* (1940), 136 Ohio St. 477, 17 O.O. 86, 26 N.E.2d 1014, paragraph one of the syllabus. Further, this court has held that such journal entries must be construed the same as other written instruments, i.e., by according the language of the journal entry its ordinary meaning. *Trifiletti v. Wolford* (Nov. 8, 2000), 9th Dist. No. 99CA007513, 2000 WL 1675053.

Where the journal entry is not ambiguous, it requires no interpretation or construction. Id.

{¶ 57} In this case, the trial court's September 15, 2004 order clearly grants appellant's motion for summary judgment only in regard to any frivolous conduct counterclaims, although the trial court did not distinguish between the counterclaims. Indeed, appellant failed to request summary judgment in regard to any other counterclaims besides those alleging frivolous conduct. Appellant concedes that Goumas filed counterclaims alleging defamation. As those counterclaims were not disposed by the trial court's ruling on the motions for summary judgment, they remained pending for trial. Appellant's third assignment of error is sustained in part and overruled in part.

### III

{¶ 58} Appellant's first and second assignments of error are sustained. Appellant's third assignment of error is sustained in part and overruled in part. While Goumas's counterclaim for frivolous conduct was dismissed, his defamation counterclaims remain pending. The judgment of the Summit County Court of Common Pleas is affirmed in part and reversed in part and remanded for further proceedings consistent with this decision.

Judgment affirmed in part
and reversed in part,
and cause remanded.

MOORE, J., concurs.

SLABY, J., dissents.