DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant David White (Appellant) appeals the decision of the Lorain County Court of Common Pleas granting Appellee Bay Mechanical Electrical's motion for summary judgment on two of Appellant's claims. We affirm.
 {¶ 2} Appellant, a black male, was formerly employed as an electrician for Appellee (Bay). On May 19, 2004, he brought four claims against Bay for racially-based discrimination and harassment in the workplace: race discrimination, hostile environment race harassment, constructive discharge, and *Page 2 
violation of public policy. Appellant voluntarily dismissed the claims for race discrimination and violation of public policy, and the court granted Bay's motion for summary judgment on the harassment and constructive discharge claims.
 {¶ 3} It is necessary first to understand the facts underlying Appellant's claims. Kurt Koepf, one of the supervisors at Bay, encouraged Appellant to come to Bay and enter apprenticeship training, which he did in 1992. In his deposition, filed as part of Bay's motion for summary judgment, Appellant recalled no harassment or racially-motivated discrimination during his four years as an apprentice. However, Appellant cited several instances of disparate or offensive treatment by Bay or its supervisors after he had become a journeyman. He claimed that he earned the least of the journeymen employed at Bay, and at times earned even less than some apprentices. In addition, he claimed that management rarely assigned him to jobs for which the prevailing wage was being paid. He also claimed that supervisors made comments about his race. One such comment was made by a supervisor named Ken Emery, who used the term "nigger" in reference to Appellant and in the presence of several other Bay employees. He also alleged that Kurt Koepf had told Appellant that he "walked like a brother."
 {¶ 4} Appellant reported Emery's comment to management at the time it was made, which was in August of 2000. Gilbert Newlands, the human resources director, conducted an investigation, and Bay suspended Emery for three days without pay. Bay also required that he attend a day-long sensitivity training *Page 3 
seminar at Cleveland State University. Appellant mentioned in his deposition other instances of what he felt were racial discrimination, but several were comments that he only heard second-hand from others, and none of these comments was documented because Appellant had never reported them to Bay's management. Moreover, he also did not communicate his concerns about his pay to management until just before he resigned his position in April, 2002. Upon resigning, Appellant began working for R.J. Martin, where he received pay and benefits comparable to those he received at Bay.
 {¶ 5} Appellant timely appeals the trial court's decision, raising two assignments of error, which we will address together.
 FIRST ASSIGNMENT OF ERROR "The trial court erred in granting [Bay's] Motion for Summary Judgment with respect to Appellant's hostile environment race harassment claim."
 SECOND ASSIGNMENT OF ERROR "The trial court erred in granting [Bay's] Motion for Summary Judgment with respect to Appellant's constructive discharge claim."
 {¶ 6} Appellant claims that the trial court improperly granted Bay's motion for summary judgment on his claims of hostile environment race harassment and constructive discharge. We disagree.
 {¶ 7} Pursuant to Civ.R. 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; (3)and it appears from the evidence that reasonable minds can come to *Page 4 
but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
Appellate review of a lower court's entry of summary judgment is de novo, applying the same standard used by the trial court. McKay v.Cutlip (1992), 80 Ohio App.3d 487, 491. The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. Id. Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts that demonstrate that a genuine issue exists for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that shows that a genuine dispute over the material facts exists.Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 8} In order to support a claim for hostile environment race harassment, a party must prove the following:
 "(1) that the harassment was unwelcome, (2) that the harassment was based on race, (3) that the harassing conduct was sufficiently severe or pervasive to affect the `terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment,' and (4) that either (a) the harassment was committed *Page 5 
by a supervisor, or (b) the employer, through its agents or supervisory personnel, know or should have known of the harassment and failed to take immediate and appropriate corrective action." Hampel v. Food Ingredients Specialties, Inc.
(2000), 89 Ohio St.3d 169, 176-77. (Internal citations omitted.)
 {¶ 9} "`Simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the `terms and conditions of employment.'" Jarvis v. The GerstenslagerCo., 9th Dist. Nos. 02CA0047, 02CA0048, 2003-Ohio-3165, at ¶ 42, quotingFaragher v. Boca Raton (1998), 524 U.S. 775, 788. Rather, "[a] hostile work environment occurs when the workplace is * * * permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Jarvis at ¶ 39. (Internal citations omitted.) See, also, Harris v. Forklift Systems, Inc. (1993),510 U.S. 17, 21. Factors that must be considered in determining whether a workplace is a racially hostile environment include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."Harris, at 23.
 {¶ 10} Appellant has presented some instances in which he allegedly encountered discriminatory or offensive statements, and a general complaint about his wages. Bay provided the court with affidavits from Kurt Koepf, Gil Newlands and Terry Burns, Bay's president. Koepf indicated that he had never referred to *Page 6 
Appellant's gait as walking "like a brother." He did note (and Appellant's performance reviews, offered as evidence, reflect) that Appellant had problems with attendance and reliability that caused him to "lag behind" the other workers. However, after Koepf's review of Appellant in January of 2002, he had recommended that Appellant receive a raise such that he would earn the top journeyman's rate of $19.00 per hour, despite Appellant's having missed twenty days of work in 2001. Appellant could provide no evidence to rebut Koepf s affidavit and the performance reviews in the record.
 {¶ 11} Burns's affidavit clearly enumerated the ways in which Appellant's performance did not measure up to that of his co-workers, particularly with respect to his attendance. Appellant was missing twelve to twenty days of work in a year, while each of his co-workers was missing fewer than ten. Moreover, Burns indicated that Bay was a "merit shop," meaning that the typical union factors for determining pay, such as seniority, would not apply to the pay determinations at Bay. Instead, Bay determined its employees' pay by considering their experience, skills, attendance, performance and leadership. Burns provided a detailed explanation of Appellant's wages in the context of the Bay pay scales from 1992 to Appellant's resignation in 2002, relying in part on the performance evaluations that were in the record before the trial court. His explanation demonstrated that Appellant's pay was competitive within the company, given his problems with attendance and motivation, which were documented in performance reviews. *Page 7 
Finally, he made it clear that Appellant had never brought any grievances to him, despite his policy of discussing employees' concerns with them as they arose. In his response to Bay's motion for summary judgment, Appellant was unable to rebut any of the evidence offered by Burns, and instead could only offer speculation as to what other employees earned and the reasons for any perceived disparities.
 {¶ 12} In his affidavit, Gilbert Newlands explained that he had investigated the comment made by Emery, and that the company had suspended Emery without pay and had sent him to sensitivity training. Appellant merely alleged that the company had allowed Emery to take vacation time for that three day suspension, and similarly alleged that he had not actually attended the sensitivity training. He could provide no evidence for these allegations. Appellant repeatedly expressed his desire to have either Emery or Koepf apologize for the incident, and indicated in his deposition that the lack of an apology — two years after the incident — was the "last straw" that led to his resignation.
 {¶ 13} Appellant could only point to a handful of instances of racially-motivated comments in the course of ten years. Although racially motivated comments are inappropriate in the workplace, the comments cited by Appellant were not sufficient to create an environment of severe and pervasive harassment that affected the terms and conditions of his employment. Moreover, most of *Page 8 
these comments were made approximately two years before Appellant resigned from Bay.
 {¶ 14} In sum, Appellant in no way provided sufficient evidence to meet his reciprocal burden under Dresher to create a genuine issue of material fact on his claim of hostile environment race harassment. He provided no evidence that the alleged harassment interfered with his work, that it was more frequent than the handful of instances he cited during the course of ten years, or that it altered the conditions of his employment. The mere allegations in his pleadings and his response to the motion for summary judgment are not sufficient to support his claims.
 {¶ 15} Similarly, the trial court properly granted Bay's motion for summary judgment on Appellant's constructive discharge claim. The Seventh Circuit has a long-standing principle that when a hostile environment claim and a constructive discharge claim are brought together, a party cannot succeed on the constructive discharge claim if he has failed in his attempt to prove the hostile environment claim. "Establishing constructive discharge is a two-step process. First, a plaintiff needs to show that [his] working conditions were so intolerable that a reasonable person would have been compelled to resign. * * * Under this standard, the working conditions undergirding a claim of constructive discharge must be even more egregious than those that would support a hostile work environment claim. * * * Second, the conditions must be intolerable because of the unlawful *Page 9 
discrimination." Rait v. Oshkosh Architectural Door Co. (E.D.Wis. 2007), ___ F.3d, at *8, citing Simpson v. Borg-Warner Auto., Inc. (C.A.7, 1999),196 F.3d 873, 877; Tutman v. WBBM-TV, Inc./CBS, Inc. (C.A.7, 2000),209 F.3d 1044, 1050.
 {¶ 16} The standard in this district for a constructive discharge claim has always been "`whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign.'" Collins v.Flowers, 9th Dist. No. 04CA008594, 2005-Ohio-3797, at ¶ 48, quotingMauzy v. Kelly Servs., Inc. (1996), 75 Ohio St.3d 578, 588-89. This would require a showing of more adverse conditions than would a hostile environment harassment claim, because the latter requires only a showing that the conditions were severe and pervasive enough to affect working conditions. Logically, working conditions may be affected without an employee's feeling compelled to resign. We therefore expressly adopt the principle of the Seventh Circuit that a party's failure to support a claim for hostile environment race harassment necessarily results in the failure of an attendant claim of constructive discharge. Appellant failed to support his claim of hostile environment race harassment, and has therefore failed to support his claim for constructive discharge. Bay's motion for summary judgment on this claim was properly granted. *Page 10 
 {¶ 17} Appellant's two assignments of error are overruled, and the decision of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 CARR, J., DICKINSON, J., CONCUR *Page 1