[Cite as *Phillips v. Regina Health Ctr.*, 2024-Ohio-6012.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

ASHLEY PHILLIPS

    Appellant

    v.

REGINA HEALTH CARE

    Appellee

C.A. No.     30883

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2021-04-1227

DECISION AND JOURNAL ENTRY

Dated: December 26, 2024

STEVENSON, Presiding Judge.

{¶1} Plaintiff-Appellant Ashley Phillips ("Phillips") appeals the judgment of the Summit County Court of Common Pleas that granted summary judgment in favor of Defendant-Appellee Regina Health Center ("Regina") on Phillips' claims of negligent hiring/supervision/retention, wrongful discharge, racial discrimination, and creation of a hostile work environment. We affirm.

I.

{¶2} Regina operates a nursing home. Phillips was employed at Regina as a State Tested Nurse's Aide ("STNA") from February 2017 until January 2018.  Phillips filed a complaint against Regina claiming negligent hiring/supervision/retention, wrongful discharge, racial discrimination, and creation of a hostile work environment based on race.

{¶3} Regina moved for summary judgment on Phillips' racial discrimination, wrongful discharge, and hostile work environment claims, and moved separately for summary judgment on

the negligent hiring/retention/supervision claims. Phillips opposed both motions. Phillips also moved for summary judgment, which Regina opposed.

{¶4} The trial court denied Phillips' motion for summary judgment. The trial court granted Regina's motions for summary judgment on all four claims. Phillips timely appealed and asserts four assignments of error for our review.

*Factual Background*

{¶5} The undisputed facts are as follows. Phillips met Mercedes when Phillips, who was working for Regina as an STNA, was transferred from night shift to day shift in August 2017. Mercedes was also an STNA. They encountered one another at least twice per week for half an hour when their shifts overlapped. As relevant to this matter, other co-workers of Phillips include Brittany Baker-Terrell ("Brittany") and Brittany Frazee ("Frazee"). Phillips and Frazee are white, and Mercedes and Brittany are Black.[1] Mercedes and Brittany are related to one another.

{¶6} Phillips alleges that while working with Mercedes and Brittany, they targeted and harassed her because she was white. Phillips defined "targeted" as meaning that they were rude, bossy, disrespectful, and would not assist her with her workload because of her race. Specifically, Phillips claimed that Mercedes refused to help her with patient care when asked; failed to be present in the lunchroom to help patients and instead, stood in the hallway on her phone and rudely ordered Phillips around. Phillips reported these incidents to the charge nurse, Barb Pilar ("Pilar"), who would usually "take care of it" by either assisting Phillips with the work or summoning

---

[1] Phillips' complaint and the trial court's order use the terms "Caucasian" and "African-American" to describe race. Phillips' brief and this Court's decision in *White v. Bay Mechanical & Elec. Corp.*, 2007-Ohio-1752 (9th Dist.), discussed *infra*, use the terms "Black" and "White." Hence, we will use the terms "Black" and "White" in this decision.

Mercedes to be present. However, Phillips never reported her concerns to anyone in Regina management because she wanted to avoid "any other negative situations going on at work."

{¶7} On January 14, 2018, the following incident (hereafter the "Incident") occurred. Phillips and Frazee were charting and about to clock out after their shifts when Phillips observed Mercedes walking up and down the hallway repeatedly saying things like "I'm tired of these lazy bitches" and "you need to take care of your residents." Mercedes was ranting about having to answer resident call lights and complaining that Phillips and Frazee were not doing their jobs. Phillips and Frazee then went to the break room to gather their belongings and clock out. Merecedes followed them into the break room, called Frazee a "lazy cracker" and a "crackhead," said that Phillips and Frazee did not take care of their residents, and called them "stupid white bitches" and "[m]other [f]'ing lazy asses." Phillips giggled as Mercedes left the breakroom because she "thought it was funny." Mercedes then returned to the break room and got within ten inches of Phillips' face, saying "[y]ou think it's funny, you little white bitch?" and "you want to take it outside? You want me to beat your ass? I'm going to beat your ass[.]"

{¶8} Phillips started following Mercedes to the elevator to make Mercedes think she was going outside with her, but instead, turned and proceeded to the nurses' station where her supervisor, Mary Freeman ("Freeman") and another STNA, Angela Djuric ("Djuric"), were present. Phillips yelled to Freeman that "[y]ou need to go get Mercedes; she's trying to beat me up. You need to go get her. I'm so sick of her calling us lazy asses." Freeman directed Phillips and Mercedes to follow her to the nursing office. When Phillips, Mercedes, and Freeman entered the nursing office, Frazee followed. Brittany also came and stood outside the office, yelling that Freeman should fire Phillips and Frazee. Freeman told everyone to stop yelling, that she could not handle the situation, and that she would need to talk to Janet Cinadr ("Cinadr"), the nursing

supervisor, who was not at Regina that day. Freeman told Frazee and Phillips to go home since their shifts were over, and directed Brittany and Mercedes to go back to work since their shifts were just starting. Phillips did not believe there was anything racially motivated or a form of employer discipline about those directives as they corresponded with the scheduled work shifts.

{¶9} Shortly after leaving work, Phillips and Frazee went to the Richfield Police Station and made a report about the Incident. That evening, a police officer went to Regina to obtain statements from other employees. The police took statements from Phillips, Frazee, Mercedes, Djuric, and Freeman. Phillips' statement accused Mercedes of not only calling her "a lazy worker" and threatening to "beat [her] ass[,]" but also of using racially derogatory terms like "white cracker" and a "crackhead[.]"

{¶10} As was customary, before leaving her shift on the day of the Incident, Freeman sent Cinadr a summary email documenting any issues regarding patient care from the weekend shifts that she thought Cinadr should be aware of before coming in on Monday. Freeman documented some concerns with both Phillips' and Frazee's patient care. One of the items Freeman documented was that approximately one-half hour after Phillips clocked out, Freeman observed one of Phillips' patients, A.T., whose brief had not been changed and who was completely soaked "with stool up her back." Based on the amount of stool, Freeman determined it had been that way for "many, many hours[.]" Freeman also documented that the wife of one of Frazee's patients, G.S., made a similar complaint.

{¶11} Upon receiving the police statements on Monday, January 15, 2018, Cinadr sent them to Joyce Haynes ("Haynes"), Regina's Director of Human Resources and Assistant Administrator, and Mark Yantek, Regina's Director. That same day, Haynes and Yantek conducted their own investigation into the Incident by interviewing all staff that had been present

during the Incident. Phillips was not interviewed because she had been given the day off at her request.

{¶12} Frazee was fired the next day for violations of patient care standards. Haynes testified that prior to firing Frazee, she reviewed the statements of both Freeman and another nurse who observed the episodes of Frazee's and Phillips' poor patient care on the day of the Incident. She also reviewed Frazee's prior disciplinary documentation regarding poor patient care and the counseling efforts that were made. After learning about Frazee's firing from Frazee, Phillips "had a feeling" she was going to be fired as well, so she delivered a letter of resignation to Regina at 8:00 p.m. that same day. The letter stated in relevant part:

> I have recently experienced harassment/unwanted/unwelcome behavior from another co-worker which include (sic) threatening comment (sic) and have filed a police report . . . . Employer has not shown they took all reasonable steps to stop harassment. I feel unwelcomed to stay present here . . . .

{¶13} Earlier that day, but prior to Phillips submitting her resignation, Haynes prepared termination papers for Phillips after having learned about Freeman's report of Phillips' poor patient care over the weekend. According to Haynes, the reason for the termination papers was "irrelevant to anything else with the argument [between Mercedes and Phillips][,]" and was based solely on "poor resident care and things reported to us" such that "[Phillips] wouldn't have been kept aboard[.]" Regarding both Frazee and Phillips, Haynes stated that "[i]t was our conclusion that [Phillips] and [Frazee], who had continued to have poor resident care and things reported to us, were at the end of [the] line and we were going to let both of them go." The next day, Mercedes and Brittany received discipline in the form of verbal coaching by Haynes and Yantek on appropriate ways to handle and report employee altercations.

**{¶14}** As all four assignments of error allege that the trial court erred in granting summary judgment in favor of Regina on each of Phillips' claims, we begin by setting forth the applicable standard of review for summary judgment.

*Summary Judgment Standard*

**{¶15}** A review of a trial court's grant of summary judgment is considered de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). We apply the same standard as the trial court, viewing the facts in the light most favorable to the non-moving party and resolving any doubt in the favor of the non-moving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992).

**{¶16}** Under Civ.R. 56(C), summary judgment is appropriate when:

(1) [no] genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

**{¶17}** Summary judgment consists of a burden-shifting framework. The movant bears the initial burden of demonstrating the absence of genuine issues of material fact concerning the essential elements of the nonmoving party's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the moving party satisfies this burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 293. "[T]he non-moving party may not rest upon the mere allegations and denials of the party's pleadings," but must point to or submit some evidentiary material of the type described in Civ.R. 56(E) that establishes the existence of a genuine issue for trial. *Id.* To withstand summary judgment, an opposing party has the reciprocal

burden of responding and setting forth specific facts demonstrating the existence of a "genuine triable issue." *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 449 (1996).

**{¶18}** When making its decision, the trial court must view the evidence "most strongly in favor" of the non-moving party, Civ.R. 56(C), and resolve all doubts in favor of the non-moving party. *Murphy,* 65 Ohio St.3d at 358-59. This means that:

> [b]efore ruling on a motion for summary judgment, the trial court's obligation is to read the evidence most favorably for the nomoving party to see if there is a genuine issue of material fact to be resolved. Only if there is none does the court then decide whether the movant deserves judgment as a matter of law. The material issues of each case are identified by substantive law. As the United States Supreme Court has explained, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.

(Internal citations and quotations omitted) *Byrd v. Smith*, 2006-Ohio-3455, ¶ 12. Summary judgment should only be granted when it appears from the evidentiary material that reasonable minds could only reach a conclusion adverse to the party opposing the motion. *Murphy* at 358-359. "In ruling on a motion for summary judgment, a trial court may not weigh the evidence and determine issues of fact." *Horner v. Elyria*, 2015-Ohio-47, ¶ 10 (9th Dist.). We will address Phillips' assignments of error out of order for ease of analysis and consolidation of issues.

II.

### ASSIGNMENT OF ERROR III

**THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT TO [REGINA] AS TO COUNT FOUR FOR WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY**.

### ASSIGNMENT OF ERROR IV

**THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT TO [REGINA] AS TO COUNT FIVE FOR CREATION OF HOSTILE WORK ENVIRONMENT BASED ON RACE.**

**{¶19}** Assignments of error three and four will be combined and addressed out of order as resolution of assignment of error number three is determined by the analysis under assignment

of error number four. Phillips alleges in the third and fourth assignments of error that she was constructively discharged from her employment; that is, she was forced to resign and effectively terminated because of the racially hostile and intimidating work environment and threats of physical violence based on race. She further maintains that the allegations of poor resident care were unsubstantiated, pretextual, and that she was constructively discharged after she complained about Mercedes' racially motivated harassment and threats of violence and made a police report. Regina argues that Phillips resigned as a tactical measure to avoid termination for poor work performance.

> To establish a claim for wrongful discharge in violation of public policy, an employee must establish that: (1) a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element)[;] (2)dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element)[;] (3) [t]he plaintiff's dismissal was motivated by conduct related to the public policy (the causation element)[;] and (4)[t]he employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).

(Emphasis omitted.)(Internal quotations and citations omitted.) *Keehan v. Korenowski*, 2017-Ohio-7050, ¶ 26 (9th Dist.). "The standard in this district for a constructive discharge claim has always been 'whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign.'" *White v. Bay Mechanical & Elec. Corp*., 2007-Ohio-1752, ¶ 16 (9th Dist.), citing *Collins v. Flowers,* 2005-Ohio-3797, ¶ 48 (9th Dist.), quoting *Mauzy v. Kelly Servs., Inc*. 75 Ohio St.3d 578, 588-89 (1996).

{¶20} In *White*, this Court adopted the view of the Seventh Circuit in *Rait v. Oshkosh Architectural Door Co*., No. 05C1271, 2007 WL 702806, *8 (E.D.Wis. 2007) for situations where constructive discharge and hostile race environment claims are brought together:

> The standard in this district for a constructive discharge claim has always been 'whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign.' This would require a showing of more adverse conditions than would a hostile environment harassment claim, because the latter requires only a showing that the conditions were severe and pervasive enough to affect working conditions. Logically, working conditions may be affected without an employee's feeling compelled to resign. *We therefore expressly adopt the principle of the Seventh Circuit that a party's failure to support a claim for hostile environment race harassment necessarily results in the failure of an attendant claim of constructive discharge.*

(Emphasis added.) *White* at ¶ 16 (9th Dist.). We ultimately concluded in *White* that because the Plaintiff failed to support his claim of hostile work environment based on race, he therefore failed to support his claim for constructive discharge. *Id.*

{¶21} Similarly, here, Phillips' constructive discharge and hostile work environment claims have been brought together. Therefore, as a threshold matter, we turn first to Phillips' hostile work environment claim.

{¶22} The elements of a claim of a hostile work environment based on race are as follows:

> (1) that the harassment was unwelcome, (2) that the harassment was based on race, (3) that the harassing conduct was sufficiently severe or pervasive to affect the 'terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment' and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, know or should have known of the harassment and failed to take immediate and appropriate corrective action.

*White* at ¶ 8 (9th Dist.). Because this is a conjunctive test, all four of its factors must be satisfied to sustain a claim.

{¶23} Phillips failed to establish a genuine issue of material fact under the fourth prong of the test, that either Phillips was harassed by a supervisor or that Regina's "agents or supervisory personnel[] know or should have known of the harassment and failed to take immediate and appropriate corrective action." *Id.* Phillips does not allege that she was harassed by a supervisor.

She claims that Regina knew about the harassment because she reported Mercedes' lack of helpfulness to the charge nurse, Pilar, and related to Freeman the comments made by Mercedes during the Incident and that Freeman took no action.

{¶24} Phillips' own deposition testimony on this point is that until the day of the Incident when she spoke with Freeman, she never made any reports to Regina management about any racial bias towards her by Mercedes. Thus, Phillips' report to Freeman about the Incident does not qualify as prior knowledge by Regina management of any harassment by Mercedes.

{¶25} Even if Freeman was a Regina agent or supervisor for this purpose, the deposition testimony of both Freeman and her supervisor, Cinadr, the director of nursing, is that on the night of the Incident, Freeman spoke with Cinadr three times and requested instructions on how to handle the situation. Freeman followed Cinadr's instructions, and Cinadr then passed along the information from Freeman to Haynes, who then conducted further investigation together with Yantek. After the investigation, Mercedes and Brittany received discipline in the form of verbal coaching by Haynes and Yantek on appropriate ways to handle and report employee altercations. Phillips does not dispute those facts. Thus, Phillips' allegation that Freeman took no action is contradicted by the record. As Cinadr is a Regina supervisor and undertook an investigation of the Incident with Yantek, the record further contradicts Phillips' claim that Regina took no action after the Incident.

{¶26} Based on the foregoing, the trial court did not err in concluding that Regina was entitled to summary judgment on Phillips' hostile work environment claim. Phillips alleged in her complaint that Regina knew about Mercedes' harassing behavior yet did nothing. Regina met its *Drescher* burden of establishing that no triable issue remained on this claim, and Phillips did not meet her reciprocal burden of establishing that a genuine issue of material fact remained for trial.

**{¶27}** As in *White*, because Phillips failed to support her claim of hostile work environment based on race, she therefore automatically failed to support her claim for constructive discharge. To the extent that Phillips has argued she was subject to threats of physical violence unrelated to racial discrimination she has also failed to show that Regina had prior knowledge of these threats and failed to act. Phillips' third and fourth assignments of error are overruled.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT TO [REGINA] AS TO COUNT THREE FOR REVERSE RACIAL DISCRIMINATION.**

**{¶28}** This Court has established the following regarding reverse racial discrimination claims:

> Ohio courts analyze discrimination claims which are based on indirect evidence under the framework provided by *McDonnell Douglas Corp. v. Green*[, 411 U.S. 792 (1973).] Under that framework, "[t]o establish a prima facie case of discrimination, a plaintiff must show: (1) membership in a protected class; (2) qualification for the position; (3) an adverse employment action; and (4) replacement by a non-protected person." A plaintiff may also satisfy the fourth prong by presenting evidence that he was treated differently than similarly situated non-protected employees. *In cases alleging reverse discrimination, however, "the McDonnell Douglas test has been modified so that, in order to establish the first step, a plaintiff must demonstrate background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority.*

> Once a plaintiff creates a rebuttable presumption of discrimination by establishing a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for taking the challenged employment action. If the defendant satisfies its burden, the plaintiff must then prove that the proffered reason was a pretext to hide unlawful discrimination. To establish such pretext, a plaintiff must show either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [her] discharge, or (3) that they were insufficient to motivate discharge.

(Internal citations and quotations omitted.)(Emphasis added.) *Vogel v. Northeast Ohio Media Group, LLC*, 2023-Ohio-176, ¶ 7-8 (9th Dist.).

{¶29} The trial court concluded that this claim failed because Phillips had made no prior complaints to Regina about any racial bias or discrimination and did not suffer an adverse employment action. Phillips argues on appeal that Regina discriminates against white employees and that she was treated differently than similarly situated Black STNA's. In her merit brief, Phillips merely lists a string of deposition testimony page numbers without developing an argument as to how any of the information contained in those pages supports her claim. "Where an appellant fails to develop an argument in support of his assignment of error, this Court will not create one for him." *State v. Franks*, 2017-Ohio-7045, ¶ 16 (9th Dist.). "'If an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out.'" *Id.*, quoting *Cardone v. Cardone*, 1998 WL 224934, *8 (9th Dist. May 6, 1998).

{¶30} Moreover, Phillips' own testimony was that other than the Incident and Mercedes being rude and unhelpful, she could not name any other instances of racial bias against white employees by anyone at Regina. By directing us to this single incident, Phillips has not established that Regina discriminates against white employees. *See Vogel* at ¶7.

{¶31} Based on the foregoing, the trial court did not err in granting summary judgment in favor of Regina as Phillips did not carry her burden of establishing that genuine issues of material fact remain on this claim. Phillips' second assignment of error is overruled.

## ASSIGNMENT OF ERROR I

**THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT TO [REGINA] AS TO COUNT TWO FOR NEGLIGENT HIRING, RETENTION AND SUPERVISION.**

{¶32} To survive summary judgment on her negligent hiring, supervision, and retention claim, Phillips must establish the following:

(1) [t]he existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such

incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries.

*Jones v. MTD Consumer Group, Inc.*, 2015-Ohio-1878, ¶ 44 (9th Dist.), quoting *Zanni v. Stelzer*, 2007-Ohio-6215, *¶* 8 (9th Dist.)  The elements of a negligent supervision claim are the same as those for negligent hiring or retention. *Browning v. Ohio State Hwy. Patrol*, 2003-Ohio-1108, ¶ 67 (10th Dist.).  Again, the test is conjunctive; therefore, all five prongs must be proven.

**{¶33}**  "A negligent hiring, retention, or supervision action is a direct claim against an employer, based on an employee's conduct that the law regards as wrongful that would not have occurred but for the employer's failure to properly hire, supervise or retain the employee." *Evans v. Akron Gen. Med. Ctr.*, 2020-Ohio-5535, ¶ 10.

> Negligent retention and supervision are negligence-based torts which require proof of the basic elements of negligence: duty, breach, proximate cause, and damages. *The existence of a duty in a negligent retention case depends on the foreseeability of injury to the plaintiff.* The existence of an employer-employee relationship imposes a duty upon the employer to prevent foreseeable injury to others by exercising reasonable care to refrain from employing an incompetent employee.

> Liability for negligent retention arises because the employer chooses to retain an employee who has a history of criminal, tortious, or otherwise dangerous conduct about which the employer knew or could have discovered through reasonable investigation. *The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act.*

(Internal quotations and citations omitted.)(Emphasis added.). *Chapa v. Genpak, L.L.C.*, 2014-Ohio-897, ¶ 111 (10th Dist.).  "Only where the employer could anticipate the misconduct, and the employer's taking the risk of it was unreasonable, will liability be imposed for any consequences." *Jevack v. McNaughton*, 2007-Ohio-2441, ¶ 21.

> In this context, incompetence relates not only or exclusively to an employee's lack of ability to perform the tasks that his or her job involves.  It also relates to behavior while on the job inapposite to the tasks that a job involves and which materially inhibits other employees from performing their assigned job tasks.

*Jevack*, at ¶ 22 (9th Dist.).

**{¶34}** Phillips argues that Mercedes' threats of assault, disrespectful and racially derogatory language, and intimidating behavior during the Incident satisfies the definition of "incompetence" under the second prong of the test because those comments "materially inhibit[ed]" Phillips' ability to perform her job tasks. *See Jevack* at ¶ 22 (9th Dist.). Phillips also argues that Regina had actual and constructive knowledge that Mercedes was incompetent for an STNA position. She claims that Regina had actual knowledge of Mercedes' racial harassment and mistreatment of white co-workers, violent language, poor attitude, and poor care relative to residents assigned to her. She argues that Regina had constructive knowledge because its pre-employment background checks were inadequate and should have included obtaining and reviewing Mercedes' employee files from previous employers before offering her a position. Phillips claims that if Regina had done so, it would have discovered Mercedes' alleged "incompetence" and that she lied on her job application. We disagree with Phillips.

**{¶35}** Phillips argues Mercedes was incompetent based on her racially disparaging and harassing comments to Phillips during the Incident, and that Regina knew about Mercedes' propensity for racial animus during her employment with Regina yet retained her anyway. Under the test set forth in *Chapa, supra*, Mercedes' conduct had to be foreseeable by Regina. *Id*. at ¶ 111; *Jevack* at ¶ 20-21 (9th Dist.). As the trial court correctly noted, the deposition testimony reflects that no management employee could recall receiving any prior reports or information alleging this type of behavior by Mercedes toward co-workers, and Phillips herself testified that she never reported any allegations regarding Mercedes' behavior to Regina management. Phillips did not put forth evidence establishing a genuine issue of material fact that Mercedes had previously engaged in harassing, threatening, or racially motivated conduct while at Regina and that Regina

knew about it. Therefore, absent Regina having prior knowledge of Mercedes' behavior, her conduct was not foreseeable by Regina, and Regina could not have "anticipated than an injury was likely to result" from it. *Chapa* at ¶ 112.

**{¶36}** We turn now to Phillips' claim that Regina had constructive knowledge of Mercedes' "incompetence" based on the inadequate background checks. Haynes testified in her deposition that she personally conducted the background check on Mercedes. Regina's policy is to request four professional references from the prospective employee and to contact three of them. Those references must be a previous or current supervisor. No employee is hired without Haynes personally speaking with those references. Haynes followed that procedure with Mercedes and received no negative reports. It is not Regina's policy to contact all previous employers listed on a resume in addition to contacting the professional references. During discovery, the subpoena results from several previous employers reflected poorly on Mercedes and showed that she was not actually employed by one of the agencies listed on her resume; that she had attendance problems; that she quit without notice; and that she worked for much less time than claimed for one employer, to name a few.

**{¶37}** Phillips is essentially arguing that Regina should have anticipated that Mercedes lied on her application, and therefore, should have contacted all her previous employers. Phillips' argument on this issue fails because she has not produced evidence from previous employers that Mercedes actually had a history of racially harassing or threatening behavior that would have been discovered if the background checks had been conducted differently. The information obtained from the subpoenas pertained to Mercedes' attendance, reliability, and truthfulness, which is not the basis of Phillips' allegations under this claim. Nothing in the hiring process revealed any previous allegations that Mercedes acted in a racially harassing or threatening manner with her

previous employers. Therefore, as Phillips' allegations in this case are based on Mercedes' threatening, racially motivated behavior, she has not shown that a failure of Regina in the hiring process is relevant to her claims.

{¶38}   Phillips attempts to support her argument with the expert report of Timothy A. Dimoff, CPP, LIP, whose opinion was that Regina "breached the standards in the industry for conducting background checks on Mercedes and Brittany . . . ."  However, Dimoff's opinion is incomplete as it lacks factual support.  He simply alleges Regina breached industry standards without any recitation of what those industry standards are and the source of his information for those standards. Thus, his opinion is based on facts and information not contained in the record, and therefore, cannot be viewed as creating a genuine issue of material fact.  Phillips' first assignment of error is overruled.

### III.

{¶39}   Based on the foregoing, we conclude that the trial court did not err in determining that Regina met its burden of demonstrating that no genuine issue of fact remained for trial on Phillips' claims, and that Phillips failed to meet her reciprocal burden of showing that a genuine issue of material fact exists.  Accordingly, reasonable minds can only conclude that Regina is entitled to judgment as a matter of law and summary judgment was properly granted in favor of Regina.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
SCOT STEVENSON
FOR THE COURT

HENSAL, J.
CONCURS.

CARR, J.
DISSENTING.

{¶40} I respectfully dissent from the judgment of the majority.

{¶41} Here, the trial court, in both of its judgment entries, placed a prominent focus on Phillips' alleged failure to bring her concerns to Regina management. While there are elements in Phillips' claim that relate to what Regina knew or should have known, I cannot say that it was necessary for Phillips to have informed management. First, the employee handbook is not in the record and thus it is unclear as to what procedure Phillips should have followed in order to ensure Regina was alerted to the issues. Further, the evidence supports that Phillips did raise concerns to

a charge nurse and her immediate supervisor. In addition, she filed a police report with respect to the Incident. Given the nature of the allegations, viewed in a light most favorable to Phillips, it would be appropriate to presume Regina had knowledge of the issues. *See Harmon v. GZK, Inc.*, 2002 WL 191598, *8 (2d Dist. Feb. 8, 2002). In light of the trial court's repeated and improper focus on the lack of reports to management, I would remand the matter to the trial court to reconsider the appropriateness of summary judgment as a means to resolve Phillips' claims.

{¶42} Even if that were not the case, I would still conclude that a genuine issue of material fact remains with respect to Phillips' hostile work environment and constructive discharges claims. "Whether a work environment is abusive or hostile can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." (Internal quotations and citations omitted.) *Id.* at *6. Here, the conduct involved threats to Phillips' physical safety, which were accompanied by actions that made it reasonable to assume that Mercedes was serious about following through with her threats.

{¶43} With respect to constructive discharge, it "depends upon the facts of each case and requires an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct upon the employee." (Internal quotations and citations omitted.) *Radcliff v. Steen Elec., Inc.,* 2005-Ohio-5503, ¶ 19 (9th Dist.). "[A]n employee can establish a constructive discharge claim by showing that a reasonable employer would have foreseen that a reasonable employee (or this employee, if facts peculiar to her are known) would feel constructively discharged." (Internal quotations and citations omitted.) *Id.*

{¶44} In the instant matter, following the Incident, Phillips and Frazee were sent home and Merecedes and Brittany were allowed to continue working and only received verbal coaching. Phillips and Frazee then reported the Incident to police. Phillips expressed concerns for her safety and was allowed to stay home from work on Monday. Meanwhile, Regina failed to conduct any meaningful investigation; Regina did not obtain a statement from Phillips or even speak to her before firing Frazee. After learning that Frazee was terminated, Phillips resigned as she expected Regina to terminate her employment as well; an instinct that turned out to be correct as Regina had begun to draft termination papers.

APPEARANCES:

NATALIE F. GRUBB and MARK E. OWENS, Attorneys at Law, for Appellant.

BETH A. SEBAUGH, JACK S. KLUZNIK, TINA RHODES, and SARAH RAVAS COOPER, Attorneys at Law, for Appellee.