[Cite as *Abdullah v. Ohio State Univ.*, 2025-Ohio-5876.]

**IN THE COURT OF CLAIMS OF OHIO**

| | |
|---|---|
| HAFIZ ABDULLAH | Case No. 2023-00107JD |
| Plaintiff | Judge Lisa L. Sadler |
| v. | Magistrate Holly True Shaver |
| THE OHIO STATE UNIVERSITY COLLEGE OF FOOD, AGRICULTURE, AND ENVIRONMENTAL SCIENCE | <u>DECISION</u> |
| Defendant | |

{¶1} On August 1, 2025, Defendant filed a motion for summary judgment to which Plaintiff timely responded. In its reply, Defendant objected to certain evidence Plaintiff submitted, namely the Declaration of Dr. Anthony Parker. Plaintiff sought leave to file a sur-reply to respond to Defendant's evidentiary argument, which the Court granted. Plaintiff filed a sur-reply, attaching an Affidavit of Dr. Anthony Parker executed by an Australian notary.

{¶2} Thereafter, Defendant filed a motion to strike because the affidavit was not properly served, it was not clear whether it was properly notarized, and Defendant argued that it contained inadmissible speculation. In response, Plaintiff argued that Defendant waived any objection to the declaration since it has known about the document since January 2023 and failed to depose or otherwise seek alternative discovery regarding the evidence. Additionally, Plaintiff served the affidavit with his response to the motion for summary judgment and argues that the affidavit satisfies Civ.R. 56 and Defendant will suffer no prejudice. In reply, Defendant reasserted that the affidavit lacks foundational support and contains inadmissible speculation, and further argued that the statement by the notary lacks notarial authority under Australian law.

{¶3} Pursuant to L.C.C.R. 4(D), Defendant's motion for summary judgment is now before the Court for a non-oral hearing. For the reasons stated below, the Court GRANTS the motion.

**Factual Background**

{¶4} In early 2018, the Poultry Operations Manager for the Department of Animal Sciences of The Ohio State University College of Food, Agriculture and Environmental Science (hereinafter "OSU") retired after which OSU interviewed, among others, Plaintiff and four internal candidates—Dr. Joel Bielke, Jarrod Snell, Jordan Welch, and Jack Sidle—to fill the vacancy at the farm located in Wooster, Ohio. Abdullah Depo., p. 33, 45. The search committee included OSU's former Associate Department Chair of Animal Sciences, Dr. Anthony Parker, and Dr. Daniel Clark, a researcher at the poultry farm. *Id.* at 39. As a result of the interview process, OSU selected Plaintiff and he began employment on March 21, 2018, as the farm's first brown-skinned, Muslim manager. *Id.* at 78. While employed, it is undisputed that Plaintiff was an "excellent employee" who had commercial farming experience, promptly responded to concerns, effectively addressed issues, and "implemented new policies and procedures that were lacking" prior to his arrival. Morris Depo., p. 16; *see also* Foltz Depo., p. 13.

{¶5} Although Plaintiff had never previously worked directly with faculty conducting academic research in a professional capacity, his background in commercial farming was an asset for the desired improvements in the farm's biosecurity operations and helpful for some of the faculty who collaborated with commercial enterprises on research. Abdullah Depo., p. 35. Because Plaintiff was an external hire from corporate farming, however, Plaintiff was informed that managing a farm in an academic setting could bring different challenges, such as conflict between professors competing for limited resources to conduct research. *Id.* at 42. Additionally, Parker told Plaintiff that he may encounter difficulties from professors and subordinates who were unhappy that no internal candidates were selected for his position. *Id.* at 47, 55.

{¶6} On Plaintiff's first day, Snell—one of Plaintiff's subordinates who had interviewed for the position—informed Plaintiff that "Sidle is a union employee and his behavior is stubborn." *Id.* at 78. Shortly thereafter, Plaintiff first met Dr. Sandra Velleman, a professor who conducts research on the farm but had no supervisory authority over Plaintiff, at which time she shared with him that she did not feel he was the correct person for the job. *Id.* at 50-51. Instead, Velleman specifically indicated that Snell was promised

the position.  *Id.* at 80.  Because they had never met prior to this conversation, Plaintiff believes the only reason she would not think he was good for the job was because of his race, religion, or national origin.  *Id.* at 70-72.  However, it is undisputed that no overt comments or actions disparaging Plaintiff's race, religion, or national origin were observed at work.  *Id.* at 130-131; Bielke Depo., p. 38.

{¶7} Additionally, Parker informed Plaintiff that Velleman, prior to meeting Plaintiff, criticized OSU's hiring decision by stating to Clark, "I hope your little experiment works." *See* Abdullah Depo., p. 58; Bielke Depo., p. 33-34.  While Plaintiff testified that Velleman could have developed a preconceived bias by deducing his race, religion, and national origin from having access to his resume prior to meeting him, Plaintiff did not know whether Velleman actually saw Plaintiff's resume prior to meeting him and he did not personally hear the comment Velleman made to Clark.  Abdullah Depo., p. 51, 58, 71-74. Notwithstanding, Velleman continued to voice concerns about Plaintiff's operational decisions and make attempts to circumvent his management authority. Abdullah Depo., p. 90-92; Bielke Depo., p. 27-29.

{¶8} Separately, Plaintiff detailed numerous instances of disrespect and insubordination from April 2018 to December 2021 that he believes were attempts to "sabotage" him.  Abdullah Depo., p. 95-115.  As a result, Plaintiff changed how he managed, including no longer meeting with Snell regarding farm operations because of how angry Snell became, and ceasing communication with Velleman.  *See id.* at 82, 110. Eventually, several faculty and subordinates began bypassing Plaintiff.  *Id.* at 90-97, 115. However, other farm staff felt farm operations were better under Plaintiff's management. *Id.* at 99; Bielke Depo., p. 18.

{¶9} Moreover, from a supervisory standpoint, Plaintiff was never disciplined and consistently received positive performance reviews.  Abdullah Depo., p. 114.  When Plaintiff reported the ongoing difficulties, his supervisors offered reassurance that he was doing a great job and voiced confidence in his ability to perform his job well.  *Id.* at 53-54. On separate occasions, Parker and Morris encouraged Plaintiff to continue managing professionally, and told him that they would discuss the issues about Velleman with Foltz, her supervisor.  *Id.* at 91; Foltz Depo., p. 9.

{¶10} While the constant interpersonal work conflicts were unwelcome, such difficulties did not negatively impact Plaintiff's own work performance, evidenced by Plaintiff continually receiving above or exceeding expectations on his performance evaluations. *Id.* at 114. Moreover, Plaintiff's June 2021 performance evaluation was among the best performance reviews Morris had ever given to any employee. Morris Depo., p. 16-20.

{¶11} On November 22, 2021, Plaintiff informed Parker that he felt the ongoing instances of disrespect, insubordination, and interpersonal conflict amounted to discrimination and observed that OSU was "not ready for a brown skinned manager and that he [would] start looking for a job outside the university." *See* OSU_000550. Following this conversation, Parker sent an email to Pasha Lyvers Leffer—OSU's Department Chair for Animal Sciences—on November 23, 2021, explaining his realization that he "failed to appropriately deal with racism, harassment, and in other cases damn nastiness by faculty within the department." *Id.*; *see also* Morris Depo., p. 9.

{¶12} On November 24, 2021, Nick Lewis—a Human Resources Consultant with OSU—followed up with Plaintiff on the concerns detailed in Parker's email. *See* OSU_000223-000225. Within seven days, Lewis coordinated a meeting among himself, Plaintiff, Alyssa Howard—OSU's Employee & Labor Relations Senior Representative— and Dr. Kathy Lechman—OSU's Assistant Dean and Director for Diversity, Equity, and Inclusion—which thereafter took place on December 7, 2021. *See id.* Within two days of this meeting, Howard provided Plaintiff with additional information about filing a formal complaint with OSU's Office of Institutional Equity (OIE) and resources available through an employee assistance program and family medical leave. *See* OSU_000243-000245.

{¶13} Thereafter, Plaintiff filed a formal complaint with OIE on December 14, 2021. *See* OSU_004094; OSU_000405-000409. Courtney Johnson, OIE's Chief Program and Education Officer, was assigned to Plaintiff's case on December 15, 2021. Johnson Aff., ¶ 2-4. Upon review of Plaintiff's complaint, Johnson "did not see any evidence of a nexus to a protected class." *Id.* at ¶ 5. When the totality of the information received shows that the allegations are not related to a protected class or fall outside OIE's purview, it is possible for a complaint to be dismissed before an investigation. *See* Maynard Depo., p. 8-9, 38-44. As a result, Johnson informed Plaintiff on December 21, 2021, that OIE was

not pursuing an investigation because his case "did not meet the standard of discrimination under OSU's policy." Johnson Aff., ¶ 6.

{¶14} Johnson also informed Plaintiff that he could contact OSU's Office of Human Resources regarding the workplace conflicts. *Id.* at ¶ 8. In the same conversation, Plaintiff responded that he had additional documentation to which Johnson informed him of his right to appeal and produce the additional documentation. *Id.* at ¶ 7. However, Plaintiff "did not appeal or otherwise produce any additional documentation." *Id.*; Abdullah Depo., p. 130. The case was officially closed on January 18, 2022. *See* OSU_000383.

{¶15} Separately, Howard followed up with Plaintiff on December 21, 2021, to inform him that OIE was dismissing his case and related that OSU could otherwise aid with managing the workplace conflict. Howard Aff., ¶ 9-12. Howard also spoke with Morris about limiting the interaction between Plaintiff and the individuals about whom he complained. Howard Depo. p. 31-32. Notwithstanding, Howard had no further contact with Plaintiff following their conversation on December 21, 2021. Howard Aff., ¶ 12.

{¶16} On February 10, 2022, Plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission (OCRC). Abdullah Depo., p. 124-129. Thereafter, Plaintiff submitted his resignation notice. *See id.* at 126. Prior to leaving OSU, Plaintiff secured employment at Versova with Trillium Farms, which he began in May 2022. *Id.* at 120-121.

**Standard of Review**

{¶17} It is well settled that "'[s]ummary judgment is a procedural device to terminate litigation and to avoid a formal trial where there is nothing to try.'" *Orr v. Schweitzer*, 2021-Ohio-1786, ¶ 12, quoting *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358 (1992). Before awarding summary judgment, courts should take caution and "resolve any doubt in favor of the non-moving party." *Darden v. City of Columbus*, 2004-Ohio-2570, ¶ 10 (10th Dist.), citing *Murphy* at 359. Additionally, courts cannot weigh the evidence or determine the credibility of witnesses when considering whether summary judgment is appropriate. *Grubach v. Univ. of Akron*, 2020-Ohio-3467, ¶ 40 (10th Dist.).

{¶18} Importantly, courts shall not render summary judgment "unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable

minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made . . . ." Civ.R. 56(C). Specifically, the summary judgment evidence must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* Indeed, it is well established that courts should not render summary judgment unless,

> construing the evidence most strongly in favor of the nonmoving party:
> (1) there is no genuine issue of material fact; (2) the moving party is entitled
> to judgment as a matter of law; and (3) reasonable minds can come to but
> one conclusion, that conclusion being adverse to the nonmoving party.

*Robinette v. Orthopedics, Inc.*, 1999 Ohio App. LEXIS 2038, *7 (10th Dist. May 4, 1999).

**Law and Analysis**

{¶19} Upon review of the evidence submitted by the parties, Plaintiff has failed to demonstrate a genuine issue of material fact for trial. While Defendant moved to strike certain evidence, the Court finds the request is moot. Assuming without deciding that all Plaintiff's evidence was admissible for consideration, Defendant is entitled to judgment as a matter of law on Plaintiff's claims for hostile work environment and constructive discharge in violation of state and federal law.

{¶20} In pertinent part, R.C. 4112.02 provides that: "It shall be an unlawful discriminatory practice: (A) For any employer, because of the race . . . religion . . . [or] national origin . . . of any person, . . . to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any other matter directly or indirectly related to employment." It is well-established that "discrimination actions under federal and state law each require the same analysis." *See generally Ray v. Ohio Dept. of Health*, 2018-Ohio-2163, ¶ 22 (10th Dist.), citing *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 196 (1981); *Little Forest Med. Ctr. v. Ohio Civ. Rights Comm.*, 61 Ohio St.3d 607, 609-610 (1991). Accordingly, "Ohio courts may look to both federal and state courts' statutory interpretations of both federal and state statutes when determining the rights of litigants under state discrimination laws." *Id.*

{¶21} To prevail on a claim for "hostile work environment created by racial harassment, the plaintiff must establish: (1) the employee was a member of the protected class; (2) the harassment of the employee was unwelcome; (3) the harassment complained of was based on race; (4) the harassment had the effect or purpose of unreasonably interfering with the employee's work performance or of creating an intimidating, hostile, or offensive work environment; and (5) respondeat superior (employer) liability." *Chapa v. Genpak, LLC*, 2014-Ohio-897, ¶ 33 (10th Dist.). Plaintiff contends that Defendant permitted a hostile work environment created by department faculty and farm staff because it failed to take appropriate and timely action to correct continual disrespect and insubordination, which amounted to racial harassment.

{¶22} While it is not disputed that the harassment was unwelcome, Defendant argues that Plaintiff cannot show that the harassment of which he complains was based on race, was severe enough to create a hostile work environment, or that Defendant failed to take appropriate corrective action. The Court agrees.

{¶23} It is well settled that "[a] hostile work environment exists where the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the condition of the victim's employment and create an abusive work environment." (Cleaned up.) *Chapa* at ¶ 54. When determining whether the harassment created an intimidating, hostile or offensive work environment, courts must consider the totality of the circumstances, including "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with the employee's work." *Id.* at ¶ 34. The purpose of these standards is to "filter out complaints which attack 'the ordinary tribulations of the workplace,'" including "the sporadic use of abusive language" and the occasional joke or teasing. *Id.* at ¶ 35.

{¶24} Plaintiff complains of numerous negative interactions spanned across a three-year period, including disrespect, sabotage, and insubordination. Notably, Plaintiff's only evidence that these interactions amount to racial harassment is that he is the first brown-skinned, Muslim manager at the poultry farm. Even considering the purported statement made by Velleman prior to meeting Plaintiff, the record is devoid of

any evidence from which the Court can discern whether such interactions related to Plaintiff's race, religion, or national origin.

{¶25} Moreover, Parker's alleged belief that the employees who harassed Plaintiff were motivated by racism is a lay opinion. *See, e.g.*, *Jenkins v. Giesecke & Devrient Am., Inc.*, 2012-Ohio-4136, ¶ 19 (9th Dist.). Separately, there is no evidence in the record to establish that Parker had personal, firsthand knowledge of any of the disrespect, sabotage, or insubordination events or that the employees who committed the same did so "because of" Plaintiff's race, religion, or national origin. To the contrary, Parker specifically informed Plaintiff that these same individuals had worked together for many years and were unhappy about not being selected for his position. Additionally, it is not disputed that Plaintiff came from a corporate farming background, not an academic one.

{¶26} Furthermore, the hearsay statement Parker relates concerning Velleman's "little experiment" comment is not overtly race-based and it occurred before Velleman met Plaintiff. While Velleman could have known Plaintiff's race, religion, and national origin before meeting him from staff having access to view his resume, the record is devoid of any evidence to this end, and speculation is insufficient to create a genuine issue of material fact that Velleman was either aware of or made this comment "because of" Plaintiff's race, religion, or national origin. Any other noted instance that could arguably amount to harassment neither relates to Plaintiff's race, religion or national origin nor poses any physical threat or humiliation to him.

{¶27} Based upon the evidence presented, reasonable minds can only conclude that the unwelcome disrespect and insubordination that Plaintiff unfortunately experienced amounts to no more than the ordinary tribulations of the workplace. Although Plaintiff feels that these interactions interfered with his work, it is undisputed that his work performance continued to meet or exceed his superiors' expectations. Even assuming that Velleman, Sidle, and Snell, among others, were intentionally sabotaging farm operations in an effort to get Plaintiff fired, it is undisputed that Plaintiff was never disciplined by Defendant for any such issues or incidents, and Plaintiff was consistently given positive performance reviews regarding his management of the farm's operations.

{¶28} While these events may have caused some disruption to the workplace environment, they appear to have been a reasonably expected resistance to change

given the procedure and policy improvements Plaintiff implemented within a short amount of time among a group of tenured employees. Put simply, employees going back and forth making complaints about one another is not a severe enough disturbance to constitute racial harassment. Moreover, Defendant never subjected Plaintiff to any adverse employment action, and the uncontroverted evidence shows he had the support of his supervisors and other colleagues. Even viewing the facts in a light most favorable to Plaintiff, the Court finds that the circumstances were not severe enough to constitute harassment and there is insufficient evidence to conclude any alleged conduct was based on Plaintiff's race, religion, or national origin.

{¶29} Lastly, "when the alleged harasser is a co-worker, rather than a supervisor, . . . an employer may be liable for a co-worker's harassment of an employee when the employer knew or should have known of the charged harassment and failed to implement prompt and appropriate action." *Chapa* at ¶ 72. However, it is not necessary to review whether Defendant failed to take immediate and appropriate corrective action given the incidents were not severe or pervasive enough to create a hostile work environment. *See, e.g., Jenkins* at ¶ 24. The Court notes, however, that it is not disputed that Plaintiff neither appealed OIE's decision to dismiss his complaint nor supplemented additional documentation for further review. Moreover, Defendant promptly responded once Plaintiff filed a formal complaint. Therefore, there are no genuine issues of material fact and Defendant is entitled to judgment as a matter of law on Plaintiffs' hostile work environment claim.

{¶30} For these same reasons, the Court similarly finds that there are no genuine issues of material fact on Plaintiff's claim for constructive discharge. Indeed, claims for constructive discharge "require a showing of more adverse conditions than would a hostile environment harassment claim" and, therefore, "a party's failure to support a claim for hostile environment race harassment necessarily results in the failure of an attendant claim of constructive discharge. *White v. Bay Mech. & Elec. Corp.*, 2007-Ohio-1752, ¶ 16 (9th Dist.). Accordingly, Defendant is entitled to judgment as a matter of law. *See, e.g., Phillips v. Regina Health Care*, 2024-Ohio-6012, ¶ 27 (9th Dist.).

{¶31} Having reviewed all the evidence in a light most favorable to Plaintiff, the Court finds no genuine issues of material fact remain for trial in this case. For the reasons

stated above, the Court finds that Defendant is entitled to judgment as a matter of law. Consequently, the Court GRANTS Defendant's motion for summary judgment pursuant to Civ.R. 56.

LISA L. SADLER
Judge

[Cite as *Abdullah v. Ohio State Univ.*, 2025-Ohio-5876.]

| HAFIZ ABDULLAH | Case No. 2023-00107JD |
|---|---|
| Plaintiff | Judge Lisa L. Sadler<br>Magistrate Holly True Shaver |
| v. | <u>JUDGMENT ENTRY</u> |
| THE OHIO STATE UNIVERSITY<br>COLLEGE OF FOOD, AGRICULTURE,<br>AND ENVIRONMENTAL SCIENCE | |
| Defendant | |

## IN THE COURT OF CLAIMS OF OHIO

{¶32} A non-oral hearing was conducted in this case upon Defendant's motion for summary judgment. For the reasons set forth in the decision filed concurrently herewith, Defendant's motion for summary judgment is GRANTED and judgment is rendered in favor of Defendant. All previously scheduled events are VACATED. All other pending motions are DENIED as moot. Court costs are assessed against Plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

LISA L. SADLER
Judge

**Filed December 3, 2025**
**Sent to S.C. Reporter 1/6/26**